UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LEWIS E. WILLIAMS,

        Plaintiff,

v.

UNKNOWN COOPER et al.,

        Defendants.
_____/

Case No. 1:18-cv-537

Honorable Robert J. Jonker

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA). Plaintiff Lewis E. Williams is incarcerated with the Michigan Department of Corrections (MDOC) at the Charles Egeler Reception & Guidance Center (RGC). Before the Court is a complaint (ECF No. 1) naming 16 MDOC employees from 4 different prison facilities as defendants. For the reasons herein, the Court will dismiss all defendants other than Defendants Cooper and Stuart due to misjoinder. The Court will dismiss the action against Defendants Cooper and Stuart for failure to state a claim.

      I.     <u>Background</u>

      As indicated, Plaintiff sues MDOC employees from different prison facilities, including the Macomb Correctional Facility (MRF), the G. Robert Cotton Correctional Facility (JCF),[1] the Lakeland Correctional Facility (LCF), and the RGC.[2] The defendants at MRF are

---

[1] Plaintiff refers to this facility as the "Jackson Cotton" facility. (Compl., ECF No. 1, PageID.2.)

[2] The RGC is not identified by name in the complaint, but that facility includes the Duane L. Waters Health Center (DWH), which is identified as the location of Plaintiff and some of the defendants.

Health Unit Manager (HUM) Heather Cooper, Deputy Warden Darnell Stuart,[3] Officer (unknown) Jackson, and Sergeant (unknown) Nguyen. The defendants at JCF are Assistant Resident Unit Supervisor Melissa Hartnagel and Dr. Charles S. Jamsen.[4] The defendants at LCF are Warden Bonita Hofner, Deputy Warden (unknown) Morrison, Inspector (unknown) Huntly, Nurse Practitioners Occie Hill and (unknown) Oelette, and Health Unit Manager (unknown) Maxam.[5] The defendants at RGC are Dr. (unknown) Larsen and Nurse Practitioner (unknown) Hill. Plaintiff also sues ADA Coordinator Therasa Luna,[6] who works at the MDOC administrative offices at 4000 Cooper Street in Jackson, Michigan. Finally, Plaintiff sues unnamed individuals identified as "Mary Roe or John Doe." (Compl., ECF No. 1, PageID.3.)

Plaintiff's allegations encompass a number of unrelated incidents occurring at different facilities over a four-year period of time, from as early as July 2014 to as late as April 2018. The Court will briefly summarize Plaintiff's allegations.

### A. Incidents at MRF

Plaintiff contends that he is legally blind and did not receive aids that he requested when he was housed at MRF in 2014 and 2015. Instead of providing those aids, Defendants Cooper and Stuart transferred him to JCF in October 2015. Shortly before his transfer, Officer Jackson became angry with Plaintiff after Plaintiff complained to him that he did not have enough time to pack up his belongings. Plaintiff was then called to the control center, where Officer Nguyen accused Plaintiff of "interfering" with another officer and threatened to have Plaintiff's

---

[3] Sometimes spelled "Steward" or "Stewart."
[4] Sometimes spelled "Jansen."
[5] Sometimes spelled "Maxsom."
[6] Sometimes spelled "Lana."

property sent "up North to another facility" where Plaintiff would not have access to his property "for a long time." (*Id.*, PageID.5.)

Plaintiff also alleges that he was slated for transfer to another facility in July 2014, but his transfer was cancelled because of his religion (Judaism) and his race.

**B. Incidents at JCF**

Plaintiff lost some of his property in the transfer to JCF. When he arrived at JCF, he discovered that thousands of his personal photographs were missing.

Plaintiff uses a wheelchair. After arrival at JCF, he attempted to enter his assigned cell but his wheelchair would not fit through the doorway. He complained about the issue, but an officer ordered him to return to his cell. When Plaintiff refused to do so, he was placed in segregation. Plaintiff explained the issue to another officer, who then removed Plaintiff from segregation and assigned him to a different cell (presumably, one that could accommodate his wheelchair).

Plaintiff alleges that he did not receive adequate assistance for his disabilities at JCF. He did not have an assistant to help with changing his bed and cleaning his cell, so he was forced to sleep in "soiled sheets, contain[ing] urine and fecal matter, almost constantly until the transfer on Feb[ruary] 13th, 2017." (*Id.*) In addition, the prisoner assigned to push his wheelchair pushed Plaintiff into a door and left him stranded outdoors on the walkway.

In November 2015, Plaintiff told Dr. Jamsen that he was having extreme pain in his shoulder and back. Jamsen prescribed only Tylenol. In February 2016, Plaintiff was seen at DWH, where a physician prescribed Plaintiff some medication for Plaintiff's shoulder and neck pain. But when Plaintiff returned to JCF, Defendant Jamsen allowed Plaintiff to take that medication for only a short period of time. In March 2016, Plaintiff received an x-ray, which showed an injury

to his shoulder and neck area. Two weeks later, Plaintiff was again admitted to DWH, where a physician prescribed medication and a heating pad. When Plaintiff returned to JCF, however, Dr. Jamsen refused to allow Plaintiff to receive anything other than Tylenol. Eventually, Dr. Jamsen referred Plaintiff to physical therapy, but the therapy did not help. Jamsen subsequently told Plaintiff that there was nothing he could do for Plaintiff's pain, except provide aspirin.

In January 2017, Defendant Luna, the ADA coordinator for the MDOC, reviewed Plaintiff's medical file and informed Plaintiff that he never should have been transferred to JCF. She also told him that the only physical aids that he could receive for his blindness were a magnifier and a talking watch. He was not permitted to have a talking clock. He even ordered a talking clock, but it was confiscated when it arrived at the prison facility. Luna promised to have him transferred to another facility to address his medical needs.

Later that month, Plaintiff had a heart attack and was hospitalized. After he was released from the hospital and returned to his cell, he discovered that some of his food items were missing. Defendant Hartnagel promised to look into the issue, but she never followed up with Plaintiff. Plaintiff attempted to file a grievance about the issue but he was on modified grievance access at the time and the grievance coordinator refused to provide him with a grievance form.

### C. Incidents at LCF

Plaintiff transferred to LCF in February 2017. Plaintiff spoke with the Warden and Inspector Stanly about a "spon"[7] that Plaintiff had with another prisoner at the facility. (*Id.*, PageID.7.) They told him not to worry about it. A few days later, a prisoner told Plaintiff to "watch his back" because the inspector had given the prisoner with the SPON a weapon in order

---

[7] A SPON is a "special problem offender notice," which the MDOC uses to document a "known or potential conflict" between two prisoners, such as when an offender "is believed likely to represent a genuine threat to the safety of an identified offender," or when "an offender will require protection from another offender due to a known conflict." MDOC Policy Directive 03.03.110 (May 20, 2002).

to kill Plaintiff. (*Id.*, PageID.8.) In addition, Defendant Maxam allegedly told Stanly not to permit Plaintiff to have a pusher to push him around the facility.

An officer allegedly confiscated some of Plaintiff's photographs on February 24.

On February 28, 2017, Nurse Hill decided to increase Plaintiff's dose of Coumadin. Plaintiff apparently suffered side effects from this decision. The next morning, Plaintiff almost fell while transferring from his wheelchair to a shower seat. Plaintiff discovered blood in his ears, nose, and rectum while showering. In addition, a prison aide informed Plaintiff that his sheets and pillow were bloody.

On March 2, Plaintiff tried to pull himself into the shower, but he could not do so and fell to the floor. He waited for 40 minutes before someone called a nurse and helped him back into his chair. Plaintiff continued to have difficulty pulling and grasping. At the end of the month, he saw a doctor. Around that time, he saw Nurse Hill, who became loud and angry and told him to get out of her office.

In early April, Plaintiff started experiencing radiating pain in his left side. While waiting to be taken to his cell, he fell out of his chair. He was taken to a hospital emergency room, where a physician discovered that he had a bladder and kidney infection.

On April 7, 2017, Plaintiff tried to move from his bed to his chair, but he could not hold on, so he was unable to take his morning medication. Defendant Maxam checked him, told him that there was nothing wrong, and threatened to transfer him to DWH (RGC). Later that day, Plaintiff transferred to DWH, where he has been housed up to the present time.

### D. Incidents at DWH (RGC)

While at DWH, Plaintiff alleges that his health has deteriorated. He can no longer sit up. No one has discussed his condition with him. He received a CT myelogram, but no one

5

told him the results. On April 9, 2018, a prison official told Plaintiff that his pacemaker needed to be replaced soon, but Plaintiff's condition was too poor to receive a replacement, and the MDOC would not pay for one.

Plaintiff also alleges that there is inadequate heat in the facility, and that he has been diagnosed with pernicious anemia, which makes him cold. He has been given extra blankets, but they do not help.

In addition, he does not receive adequate laundry. When he falls asleep, he defacates on himself, and sometimes over a day goes by before he is cleaned.

### E. Relief Requested

Based on the foregoing allegations, Plaintiff seeks an injunction prohibiting the MDOC from housing any prisoners at DWH. He also seeks damages.

## II.  Misjoinder

Plaintiff's various allegations are not suitable for a single federal action. Rules 18 and 20 of the Federal Rules of Civil Procedure govern the proper joinder of claims and parties. The Court has authority to *sua sponte* dismiss parties who are not properly joined as defendants in this action. Fed. R. Civ. P. 21.

### A. Standard

Rule 20(a) limits the joinder of parties in single lawsuit, whereas Rule 18(a) limits the joinder of claims. Rule 18(a) permits a plaintiff to join as many claims as he has against an opposing party. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Where multiple defendants are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), quoted in *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties have free reign to join multiple defendants into a single lawsuit with multiple claims that are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 438 (3d Cir. 2007) (dismissing prisoner complaint with "multiple constitutional violations that occurred over a span of seven years[,] . . . aris[ing] out of different transactions and occurrences"). In short, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question

7

of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts [] . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corrs.*, 2007 WL 4465247, *3 (E.D. Mich. Dec. 18, 2007)).

Permitting expansive joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding *in forma pauperis*, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). A prisoner could attempt to avoid payment of multiple filing fees for what should be multiple lawsuits, or attempt to a avoid a "strike," by combining a raft of frivolous claims against many defendants in the hope that at least one claim will survive dismissal. Thus, "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

8

### B. Analysis

#### 1. HUM Cooper

The first defendant identified in the body of the complaint is HUM Cooper. Plaintiff alleges that he sent Cooper a list of "items" that he needed to "cope" with his legal blindness in September 2015, while incarcerated at MRF. (Compl., PageID.4.) Apparently, Cooper did not provide these items.

On October 15, a social worker informed Plaintiff that an outside group was willing to pay for the items that Plaintiff needed. That same day, Defendant Stuart requested that Plaintiff be transferred to another prison facility. Plaintiff transferred to JCF four days later. Plaintiff contends that Cooper and Stuart transferred Plaintiff to another prison to avoid providing the requested items. Plaintiff asserts that their actions violated the ADA.

#### 2. Deputy Warden Stuart

Deputy Warden Stuart is a defendant named in the complaint. Plaintiff has stated a claim against him that is transactionally related to one of the claims against Defendant Cooper. Specifically, Plaintiff alleges that Cooper and Stuart transferred him to another facility to avoid providing certain items to Plaintiff. Thus, Stuart is properly joined as a defendant.

#### 3. Other Defendants

None of the other claims against the other defendants are transactionally related to any claim against Defendants Cooper and Stuart. Keeping the other defendants in this action would not promote judicial economy and fairness. Moreover, it might encourage Plaintiff—who has already filed two civil rights actions that were dismissed for failure to state a claim[8]—to continue to file scattershot complaints in an attempt to avoid the consequences in 28 U.S.C.

---

[8] *See Williams v. Jabe*, No. 2:90-cv-70333-AC (E.D. Mich. Mar. 20, 1990); *Williams v. Vasil*, No. 5-92-107 (D. Minn. Dec. 8, 1992).

§ 1915(g) of filing a third lawsuit that is frivolous, malicious, or fails to state a claim. Accordingly, the other defendants are not properly joined in this action.

### C. Remedy for Misjoinder

"Misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time[.]'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *cf. Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

10

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983 and the ADA. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The same statute of limitations applies to claims under Title II of the ADA. *See Lewis v. Fayette Cty. Detention Ctr.*, No. 99-5538, 2000 WL 556132, at *2 (6th Cir. Apr. 28, 2000) (adopting state statute of limitations for ADA claim). However, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

The actions about which Plaintiff complains occurred in October 2015 or sometime thereafter,[9] well within the three-year period of limitations when he filed his complaint. Thus, with the benefit of tolling under Michigan law, his claims against the misjoined parties are not at risk of being time-barred if those parties are dropped from this action. He will have ample time to refile any new actions. Accordingly, under the Court's authority in Rule 21, the Court will dismiss without prejudice all defendants other than Defendants Cooper and Stuart.

### III. Failure to state a claim

After dismissal of the defendants other than Cooper and Stuart, the Court must determine whether to serve the complaint. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28

---

[9] There are some allegations about the cancellation of a prison transfer in 2014, but Plaintiff does not allege that any of the named Defendants were involved in that incident. Thus, the Court does not consider those allegations to be pertinent to its analysis of whether to sever any misjoined defendants.

11

U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

## A. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff does not state a claim against Defendants Cooper or Stuart under § 1983. Their failure to provide aids for Plaintiff's blindness potentially implicates his rights under the Eighth Amendment, but Plaintiff does not allege facts establishing a violation of those rights.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff does not allege that he faced a serious risk to his health or safety as a result of being denied unidentified aids for his blindness, let alone that Defendants Cooper and Stuart were deliberately indifferent to such a risk. Accordingly, Plaintiff cannot prevail on an Eighth Amendment claim.

Furthermore, Defendants did not violate Plaintiff's rights by transferring him to another prison. Plaintiff has no constitutional right to any particular placement or security classification. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State[.]" ); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (prisoner has no liberty interest in placement at a particular prison). Thus, for all the foregoing reasons, Plaintiff does not state a claim against Defendants Cooper and Stuart under § 1983.

### B. ADA

Plaintiff also contends that Defendants deprived him of his rights under the ADA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA,

Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008).

Plaintiff's ADA claim fails because he does not allege any facts indicating that he was denied the opportunity to participate in any prison programs or services at MRF, or that Defendants Cooper or Stuart discriminated against him, on account of his blindness or other physical needs. Indeed, Plaintiff does not specify what "items" he requested from Cooper and Stuart or why he needed them. Thus, for all the foregoing reasons, Plaintiff fails to state a federal claim against Defendants Cooper and Stuart.

### C. State Law

Plaintiff generally references state law and prison policies in the portion of the complaint discussing his ADA claim against Cooper and Stuart (Compl., PageID.14), but he does not indicate what laws or policies he is referring to. This is not sufficient to state a claim under federal law. To the extent he states a claim under state law, the Court declines to exercise jurisdiction over such a claim.

Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998).

Accordingly, Plaintiff's state law claims against Defendants Cooper and Stuart, if any, will be dismissed without prejudice.

## Conclusion

In summary, the Court will dismiss without prejudice all defendants other than Defendants Cooper and Stuart under the Court's authority in Rule 21 of the Federal Rules of Civil Procedure. In addition, after conducting the review required by the Prison Litigation Reform Act, the Court determines that claims against Defendants Cooper and Stuart under federal law must be dismissed with prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c). Any claims against them under state law will be dismissed without prejudice because the Court declines to exercise jurisdiction over them. 28 U.S.C. § 1367(c)(3).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

The Court will enter an Order and Judgment consistent with this Opinion.

Dated:  October 26, 2018                   /s/ Robert J. Jonker
                                                                             Robert J. Jonker
                                                                             Chief United States District Judge